Hebbebt, J.
The problem before this court in determining whether the decision of the Board of Tax Appeals is unreasonable or unlawful is to ascertain the applicable controlling law.
Section 5739.23, Bevised Code, was amended by three separate acts of the 102nd General Assembly. See 127 Ohio Laws, 143 (Amended Senate Bill No. 224), 127 Ohio Laws, 757 (Amended House Bill No. 502), and 127 Ohio Laws, 837 (Amended House Bill No. 676).
One of the questions in this appeal is: “Which of the three proposed amendments to Section 5739.23 of the Bevised Code, all passed by the General Assembly and approved by the Governor, became the effective and existing statute?”
Much of the confusion is dispelled by an examination of the history of the three acts. The first bill introduced was Senate Bill No. 224, entitled “a bill to amend Section 5739.23 of the Bevised Code to exempt revenues which a subdivision receives from additional taxes voted by its electorate from calculation in the ‘local government fund.’ ”
The next bill introduced was House Bill No. 502, entitled “a bill to amend Sections 5739.21, 5739.22, 5739.23 of the Be-vised Code relative to the allocations to and distribution of the local government fund.” The principal purpose of this bill was to amend Section 5739.21, Bevised Code, to increase the gross amounts of the contributions by the state from sales tax revenues to the local government fund. Section 5739.23 was to be amended only to change the year date of 1955 (see 126 Ohio Laws, 1042) to 1957 in the six places where the earlier date appeared, and was otherwise unchanged.
Beference to 127 Ohio Laws, 757, shows that this bill was *422 given an effective date of June 17, 1957, the date on which it was filed with the Secretary of State, apparently because of Informal Opinion No. 14 of the Attorney General, dated June 25,1951. That opinion related to a 1951 act (see 124 Ohio Laws, 768) amending Sections 5546-18 and 5546-20, General Code (Sections 5739.21 and 5739.23, Bevised Code), which act contained, in addition to amendments of those sections, the following language:
“There is hereby appropriated out of any monies in the state treasury to the credit of the General Bevenue Fund and not otherwise appropriated a sum equal in amount to 30 per cent of the above-described excess to the credit of the local government fund.”
Because of the above-quoted language, the Attorney General advised that the 1951 act should be treated as an appropriation act to become effective immediately under the provisions of Section Id, Article II of the Ohio Constitution. Such language is not present in Amended House Bill No. 502.
It is not necessary, however, to consider further in this opinion the seeming variance of effective dates for the reason that Amended House Bill No. 676 and Amended Senate Bill No. 224 both included all the provisions of House Bill No. 502 as it amended Section 5739.23, and, therefore, becoming effective simultaneously on September 16,1957, they either repealed Section 5739.23 as enacted in House Bill No. 502 or at least coincided in date of operative effect.
Accordingly, for further consideration throughout this opinion, these three amendments to Section 5739.23, Bevised Code, will be considered as effective on the same date which, it might be noted incidentally, was conceded by the parties.
The last bill introduced was House Bill No. 676, entitled “a bill to amend Section 5739.23 of the Bevised Code relative to the apportionment of the undivided local government fund.” The amendment proposed by this bill (in addition to changing the year dates to conform to Amended House Bill No. 502) provided new matter which involved limitations upon the percentage amounts of the fund to be apportioned to the counties and municipalities based on the percentage of urban population.
Thus, it must be initially noted that there was no conflict *423 in the respective purposes of Senate Bill No. 224 and House Bill No. 676, and as enacted each effected a differing and supplemental amendment to the then existing Section 5739.23, Revised Code.
This is clearly disclosed when these so-called separate enactments are superimposed on each other. As so considered, there are only minor changes of dates (to bring the section up to date) but extensive supplemental amendments interpolated.
The House with great care added to Senate Bill No. 224 all the amendments it had theretofore passed in House Bill No. 676 and House Bill No. 502 (so far as it affected Section 5739.23), so that Amended Senate Bill No. 224 included all the added provisions and previous amendments. The only matter deleted from the previously effective section (126 Ohio Laws, 1042), other than change of dates, was the word, “thereafter,” in the third paragraph. It should be noted that had the Senate, when it passed Amended House Bill No. 676 on May 28, amended it to accomplish the purpose of Senate Bill No. 224, in the same manner that the House amended Senate Bill No. 224 on May 29 (to add the new matter contained in Amended House Bill No. 676), we would then have had two identical bills, each with a separate purpose and each containing the amendments of the other. Amended House Bill No. 502 was at no time amended by either body, with respect to Section 5739.23, to conform to either Amended House Bill No. 676 or Amended Senate Bill No. 224. The fact that the House passed Amended Senate Bill No. 224, thereby accepting the prime purpose stated in the caption of that bill, clearly indicates acceptance by that body of the principle of excepting from consideration, in allocating local revenue funds, those revenues which a subdivision receives from additional taxes self-imposed by its electorate.
In the case of Ritzman v. Campbell, 93 Ohio St., 246, 112 N. E., 591, L. R. A. 1916 E, 1251, Nichols, C. J., in his opinion (p. 262) made the following comment which is appropriate here:
“Consideration of weight must be given to the general knowledge of the inevitable tendency of all legislative bodies of these modern days to put off final action on more important measures until the closing .days of the session.
*424 “At this time differences of long standing are being ironed out by conference committees, and an examination of the volumes of our Session Laws will disclose the fact that in these last days bills to the number of a hundred or more are finally enacted into law.
“The joint enrolling committees of the General Assembly and the clerical forces of both bodies are fairly overrun with bills, and must of necessity labor to the point of exhaustion.
“The wonder is not that some mistakes creep into our laws, but rather that more serious and blundering errors are not to be found. It is really a tribute to the efficiency of the clerical forces of the General Assembly that so much of certainty and correctness is had.”
Therefore, combining these three separately passed acts and giving effect to the legislative intent as we see it, Section 5739.23, as it is applicable to the issue here, reads as follows: “Within ten days after July 15, * * * 1957, the Board of Tax Appeals shall make and certify to the county auditor of each county an estimate of the amount of the local government fund to be allocated to the county for the last six months of the year * * # 1957. Within ten days after receiving the certificate of the board, each auditor shall convene the budget commission of his county in special session for the purpose of reviewing its work of determining the amount of the undivided loca] government fund to be apportioned to each subdivision entitled to participate in the distribution of the undivided local government fund for the last six months of the year * * * 1957.
“The auditor shall present to the commission, when so convened, the certificate of the board, the annual tax budget and estimates, and the records showing the action of the commission in its last preceding regular session. The commission, after extending to each subdivision an opportunity to be heard, and considering all the facts and information presented to it by the auditor,' shall determine the amount needed by each subdivision for current operating expenses for the last six months of * * * 1957 in addition to revenues available from all other sources, except those revenues which a subdivision receives from an additional tax or service charge voted by its electorate, in order to enable it to carry on its essential local governmental functions.

*425
“Within ten days after the budget commission has made its determination, the auditor shall publish a list of the subdivisions and the amount each is to receive from the local government fund in a netvspaper or newspapers of county-wide circulation.

“Within ten days after July 16, * * * 1957, and within ten days after July 15 in each year thereafter, the Board of Tax Appeals shall certify to the auditor of each county an estimate of the amount of the local government fund to be allocated to the undivided local government fund of the county for the ensuing calendar year, and the estimated amount to be received by the undivided local government fund of each county from the taxes levied pursuant to Section 5707.03 of the Revised Code for the ensuing calendar year.
“At the special session convened pursuant to this section in the year * * * 1957, and at the regular session in each year * * * convened pursuant to Section 5705.27 of the Revised Code, the commission shall apportion the estimated amount of the undivided local government fund of the-county among the subdivisions in which need for additional revenues has been found, in proportion to the amount of the needs of each as so determined, provided that, beginning with the apportionment for the calendar year 1958 made in the regular session in 1957, in the event the total population of all the municipal corporations within the county is less than 41 per cent of the total population of the county, as shown by the last federal census, not more than 60 per cent of the undivided local government fund shall be apportioned to the county, and in the event the total population of all the municipal corporations within the county is more than 41 per cent and less than 81 per cent of the total popvdation of the county, as shown by the last federal census, not more than 50 per cent of the undivided local government fund shall be apportioned to the county, and in the event the total population of all the municipal corporations within the county is more than 81 per cent of the total population of the county, as shown by the last federal census, not more than 30 per cent of the undivided local government fund shall be apportioned to the county, and provided that in counties having a population of less than one hundred thousand, not less than ten per cent shall be distributed to the townships therein.

*426
11 Where the actual amount distributed to any county in 1956 exceeds the maximum amount that such county could have received in 1956 if the limitations set forth in the preceding paragraph of this section were applied, by an amount greater than an amount equal to 20 per cent of the total undivided local government fund for the entire county for the calendar year 1956; then notwithstanding the limitations set forth in the preceding paragraph of this section, beginning with the calendar year 1958, the county budget commission shall reduce the percentage share of the undivided local government fund to be received by the county from the percentage share actually received by the county in 1956, in four equal annual steps so that the percentage share of the county in the total undivided local government fund for the entire county for the calendar year 1961 does not exceed the limitations set forth in the preceding paragraph of this section.

“On the basis of such apportionment, the auditor shall compute the percentage share of each such subdivision in the undivided local government fund and certify such percentage shares to the county treasurer who shall be governed thereby in making distribution of the money in the undivided local government fund, and the auditor, when the amount of such shares is in the custody of the treasurer in the amounts so computed to be due the respective subdivisions, shall at the same time certify to the Auditor of State the percentage share of the county as a subdivision.
“All money received into the treasury of a subdivision from the undivided local government fund in a county treasury shall be paid into the general fund and used for the current operating expenses of the subdivision.
“If a municipal corporation maintains a municipal university, such municipal university, when the board of directors so requests the legislative authority of the municipal corporation, shall participate in the money apportioned to such municipal corporation from the total local government fund, however created and constituted, in such amount as requested by the board of directors, provided such sum does not exceed nine per cent of the total amount paid to said municipal corporation.”
The new matter in this section is shown in italics. The *427 words, “except those revenues which a subdivision receives from an additional tax or service charge voted by its electorate,” in the second paragraph, and the entire third paragraph are the new matters originally proposed in Senate Bill No. 224. The new language in the fifth paragraph and the entire sixth paragraph were adopted as a part of House Bill No. 676 and later incorporated in Amended Senate Bill No. 224, when it was under consideration by the House, with which amendment the Senate concurred. However, it was never added to Amended House Bill No. 502. Although not important here, the deletion of “thereafter” in the fifth paragraph also originated in House Bill No. 676 and was later incorporated in the Senate bill by House amendment. Changes of dates were first incorporated in House Bill No. 502 and later included in both the other bills.
Construing the statute as thus amended, was there authority for the action of the budget commission which excepted the revenues voted by the electorates from the computation of the amounts due the villages of Casstown and Covington and the city of Troy?
'The Board of Tax Appeals in its decision held that this provision was applicable only to the last six months of 1957 and that, “if the Legislature had wished to provide that this same exclusion be applied to the local government fund for the year 1958 and thereafter, it would have been a very simple matter for it to have incorporated that desire into the act.”
The board stated further:
“As to the allocation for the calendar year 1958 it would appear that the clear import of the fifth paragraph of Senate Bill No. 224 (or the fourth paragraph of either House Bill No. 676 or House Bill No. 502) requires the budget commission, when convened in regular session, to allocate the undivided local government fund for the year 1958, and for each year thereafter, to participating subdivisions in proportion to the needs of each subdivision for additional revenues as determined by the budget commission, taking into account all anticipated general fund revenues as well as all anticipated current operating expenses.”
It is in this interpretation that we consider the board’s decision to be in error.
*428 An examination of the second paragraph of Section 5739.23, as set forth above, discloses the amended formula for the budget commission to follow in determining the amount needed by each subdivision for current operating expenses. It is true that this formula specifically relates to the last six months of 1957, but it nevertheless is the only formula contained in the act. The budget commission is required to consider “all the facts and information presented to it by the auditor” in its determination of “the amount needed by each subdivision for current operating expenses for the last six months of 1957 in addition to revenues available from all other sources except those revenues which a subdivision receives from an additional tax or service charge voted by its electorate, in order to enable it to carry on its essential local governmental functions.”
This language is the only authority in Section 5739.23, Revised Code, allowing the budget commission to consider and determine the needs of each subdivision for current operating expenses. If this authority is to be exercised by the budget commission only for the limited period of six months in 1957, then the statute contains a serious omission and would be unworkable for subsequent periods in that it would fail to provide a formula applicable, thereto. Such a construction, however, is not only not required but would ignore the provision in the fifth paragraph that at the regular session in each year convened pursuant to Section 5705.27, Revised Code, “the commission shall apportion the estimated amount of the undivided local government fund of the county among the subdivisions in which need for additional revenues has been found, in proportion to the amount of the needs of each as so determined.”
The word, “so,” in the phrase, “as so determined,” can refer only to the second paragraph, as otherwise the words, “the needs of each, ’ ’ would be undefined and unlimited by any statutory language. Reviewing the history of this section, back to its original enactment (115 Ohio Laws, pt. II, 306, 317) and including subsequent amendments, this conclusion is inescapable.
Considering the separate purpose of each of the 1957 amendments and the fact that no one is in conflict with either of the others, it would seem illogical and a disregard of the well *429 established rules of statutory construction to read the formula contained in the second paragraph out of the fifth.
We hold, therefore, that, where the General Assembly enacts the same section of the Revised Code by three separate acts, effective at the same time, and one of such acts amends the existing section only by changing obsolete year dates, and the other two acts incorporate these date changes, and each adds new matter supplemental to such section which does not delete or change the language in- the then existing section, and which acts, considered separately, are not in conflict with each other, each act of the General Assembly must be given equal effect, and the amended section of the Revised Code must be taken and construed as a composite of all three acts.
It is also contended by the appellees that under the provisions of Section 5705.27, Revised Code, the budget commission was required to aet between the first Monday in August and September 1, 1957, on the 1958 apportionment of the local government fund; that since Section 5739.23, Revised Code, as amended, was not effective until September 16, 1957, the budget commission had power only to apportion under the old provisions of Section 5739.23 as in effect during August 1957; and that a holding otherwise would give retroactive effect to the amended statute, within the meaning of Section 28, Article II of the Ohio Constitution.
Section 5705.27, Revised Code, provides, in part:
“The commission shall meet at the office of the county auditor in each county on the first Monday in August annually and shall complete its work on or before the first day of September, annually, unless for good cause the Board of Tax Appeals extends the time for completing the work.”
This language by the General Assembly does not of itself appear mandatory. Failure to complete on time may be excused, and there is nothing therein prohibiting action by the budget commission after the first day of September even if the time is not extended by the Board of Tax Appeals.
The record in. this case shows that the action by the budget commission was on January 16, 1958. The following statement in 37 Ohio Jurisprudence, 333, Section 37, is pertinent.
*430 “There are a great many statutes in which the time is fixed for doing stipulated things and in which time is of the essence of the matter; and, in such event, the statute must be considered to be mandatory, and the act cannot be performed at any other time. On the other hand, there are many statutes where the time designated is not of the essence of the matter; and, in such instances, the provisions are directory merely — at least where the rights of no person or class of persons would be prejudiced by the delay. All enactments imposing duties impossible of performance within the stipulated time have been declared directory.” See, also, State, ex rel. Perkins, v. Ross, 109 Ohio St., 461, 143 N. E., 34.
It is difficult to see how Section 5739.23, effective September 16, 1957, can be held inapplicable to distribution of sales taxes to be paid monthly in 1958 and to estimated revenues from taxes paid by financial institutions in 1958, merely because another statute, Section 5705.27, prescribes the time for the annual regular session of a county budget commission. Such a holding would be a violation of the rule of construction that statutes are to be given a prospective operation unless by their terms they are clearly retrospective. 37 Ohio Jurisprudence, 819, Section 500.
Since the provision of Section 5705.27 is directory and not mandatory, the action taken by the budget commission on January 16, 1958, was valid. And, since, as heretofore determined, the new provisions of amended Section 5739.23 were then in effect, the commission was bound to make distribution of the local government fund in accordance with the formula prescribed therein — as it did.
The decision of the Board of Tax Appeals in this case, being unreasonable and unlawful as set forth herein, is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Decision reversed.

v Zimmerman, Stewart, Taet, Matthias and Bell, JJ., • concur.
Wetgandt, C. J., dissents.